CORNELIUS C. VERMEULE

*v.*

JOHN D. VERMEULE et al.

[Decided January 19th, 1914.]

1. An action on notes will not be temporarily enjoined on the ground that it involves a partnership transaction where, from the affidavits for and against the preliminary injunction, it is doubtful whether the co-partnership exists, and it appears that the notes were special transactions not relating to the partnership affairs.

2. On a bill to enjoin an action at law on the theory that the action arose out of a partnership demand, and to require an accounting between the parties, where the evidence establishes a joint adventure the parties will be decreed an accounting, though the bill specifically alleges the existence of a partnership.

3. In a suit to enjoin the prosecution of an action on notes given by complainant on the ground that the notes were part of a transaction relating to a joint adventure between the parties, and that complainant was entitled to an accounting before being sued in an action at law, evidence *held* insufficient to establish the existence of a joint adventure entitling him to an accounting.

Heard on bill, amended bill, answer and amended answer, replication and proofs.

*Mr. Robert H. McCarter* and *Messrs. McCarter & English,* for the complainant.

*Mr. Sherrerd A. Depue* and *Messrs. Lindabury, Depue & Faulks,* for the defendants.

EMERY, V. C.

The occasion of filing this bill was the commencement of a suit in the supreme court of this state by John D. Vermeule, one of the two original defendants, against complainant, Cornelius C. Vermeule. The suit was brought in September, 1901, to recover the amount claimed to be due upon three notes, two of them being notes for $5,000 each, drawn by C. C. Vermeule, payable to his own order and endorsed by defendant John D. Vermeule for the accommodation of the maker, discounted for complainant's benefit, and which J. D. Vermeule, as endorser, paid at maturity, at the maker's request. The third note was a note of a Maine corporation called the York Cliffs Improvement Company, for $10,000, dated November 24th, 1897, and payable to John D. Vermeule on demand, executed by complainant as treasurer of the company. Upon this note was an endorsement, that it was given to be held by J. D. Vermeule as collateral security for moneys to be advanced by him to the company to pay its then outstanding bills payable, accounts payable and current expenses, and a further endorsement signed by the com-

plainant, "I hereby assume liability for all moneys to become due or to be secured by this note to the extent of eleven twenty-sevenths of the entire amount." In the suit at law, defendant J. D. Vermeule alleged that the $10,000 was subsequently advanced to the company, which failed to repay, on demand, and judgment for eleven twenty-sevenths thereof, with interest, was claimed on the guaranty of C. C. Vermeule.

Previous to the commencement of this suit in New Jersey, the defendant John D. Vermeule had commenced an action against the complainant in the supreme court of the State of New York, to recover the amounts claimed to be due upon the same three notes, in which action the complainant had set up a number of defences, including defences thereto claimed to be equitable defences to the action and which are the basis or foundation of the present bill to enjoin the suits at law. An injunction was prayed against further prosecution of the suit in New York as well as the suit in New Jersey.

As to all three of the notes the general claim alleged by the bill is that they were given in the course of and in connection with a co-partnership existing between the complainant, the defendant John D. Vermeule and the defendant Joseph N. Kinney, in a speculative enterprise of exploiting, developing and marketing lands at the seaside resort, York Cliffs, in the State of Maine, and were given to raise funds to be used in this partnership. And it was further claimed that no final accounting had been made of these partnership transactions between the partners, that the other two partners had, in reference to certain transactions set out in the bill, become accountable to him and that no equitable settlement of the affairs of the partnership could be made unless the claims against the complainant arising out of said notes were adjusted in connection with the settlement of the affairs of the partnership. As to the two $5,000 notes, the further claim was made by the bill that by reason of certain dealings relating thereto specially set out in the bill, between the complainant and J. D. Vermeule, including the assignment to the latter of the complainant's book account against the company and of certain shares of complainant in the stock of the company, which stock J. D. Vermeule held as collateral

for the notes, these two notes of $5,000 each were paid, as between defendant Vermeule and complainant, and complainant was no longer liable to J. D. Vermeule upon them.

The answer of J. D. Vermeule, and the affidavits filed on his behalf, denied the formation or existence of any partnership, to any extent or for any purpose, and claimed substantially that the notes in question were, as between the parties thereto, special and separate transactions not connected with any other accounts or transactions between them. And, the special defence set up to the two notes claimed to have arisen out of the dealings between the two Vermeules alone being a legal rather than an equitable defence, the preliminary injunction against further prosecuting the suits at law was denied, both because of the doubts raised as to whether a partnership existed, and also because, even if a co-partnership did exist, the affidavits seemed to warrant the conclusion that these notes were special transactions in which the complainant had expressly agreed to pay these debts, and must pay them if liable, getting allowance for the payment, if entitled to it, on any final accounting. The prosecution of the suit to verdict and judgment should not therefore be enjoined. *2 Lind. Part. *566.* This denial of a preliminary injunction was, however, without prejudice to renewal of the application after judgment at law. Upon the trial at law verdict was found for the defendant in the suit at law, the complainant herein, upon the two $5,000 notes, and a verdict against complainant, upon his guarantee of the York Cliffs Improvement Company note. Judgment in favor of John D. Vermeule against the complainant was entered in the supreme court on June 5th, 1906, and on August 1st, 1906, the amount of the judgment, with interest and sheriff's execution fees ($5,694.01), was paid into this court, as a condition of enjoining execution. After this judgment at law complainant brought suit in the supreme court of Maine on October 27th, 1906, against the York Cliffs Improvement Company to recover from it this amount of $5,694.01, thus paid by complainant into court as surety on the company's note of November 24th, 1897, and on April 26th, 1909, complainant recovered judgment for this amount with interest from August 1st, 1906, the date of payment into court,

$6,551.90, and costs. This judgment against the company obtained in Maine was satisfied by sale of the company's lands on execution on the 10th day of July, 1909. This suit in Maine, brought by complainant against the York Cliffs Improvement Company in October, 1906, was still pending and undetermined at the close of the taking of proofs at the original hearing in this cause in February, 1909, but was proved at a further hearing on July 29th, 1910, had upon an opening of the proofs and filing an amendment to the answer.

It was further specially claimed by the bill that in the course and prosecution of this alleged partnership, two corporations were organized in the State of Maine to take over the partnership lands for the purpose of developing and marketing the lands, but that the organization and operation of the corporations and their ownership were incidental to the prosecution of the partnership which, as is alleged, continued after their formation, and still continues. The bill specially charges that a large hotel property belonging to the company, which was erected at an expense of over $125,000, advanced by the three partners as a "syndicate," was mortgaged by the hotel company to a trust company, of which defendant J. D. Vermeule was vice president, to secure $50,000 for advances by J. D. Vermeule and Kinney, for their advances to that amount over and above the amount contributed by the "syndicate" as a firm, and that this mortgage had been foreclosed by the trust company, at J. D. Vermeule's instance, and the company's equity foreclosed by a sale to the trust company which now holds the title. This title, the bill alleges, the defendants claim is held in trust for them alone, but complainant claims that it is held in trust for the firm, and constitutes part of the partnership property for which an accounting and allowance should be made. The bill does not specify or claim any other special property as being assets of the firm to be taken over. It prays the dissolution of the alleged partnership, the appointment of a receiver, if necessary, and an accounting with an injunction against the pending suits by the defendant J. D. Vermeule, for the purpose of having claims upon them brought into the partnership account.

Complainant is a resident of New Jersey, but both the de-

fendants are residents of other states, J. D. Vermeule of New York and Joseph N. Kinney of Maine or Pennsylvania. Defendant Vermeule was brought into court on the application for injunction by service upon his attorney in the New Jersey suit, and subsequently filed an answer in the suit. The defendant Kinney, the other alleged partner, was not served with process, and did not appear in the suit. The answer of the defendant J. D. Vermeule denied the alleged partnership, as did also J. N. Kinney, in an affidavit filed on behalf of the defendant J. D. Vermeule.

At the hearing the only asset or property claimed to belong to the alleged partnership was the equity of the defendants, J. D. Vermeule and Joseph N. Kinney, in the hotel property, after the foreclosure, it being claimed that this property, although owned by the company and mortgaged by it, was still, as between the members of the "syndicate," partnership property, and, therefore, upon the purchase, still subject to an accounting therefor, as between the partners, and without regard to or taking into account the transfer of it to the company. The trust company, which holds the legal title, is not a party to the suit. No other property or asset was suggested as an asset of the alleged partnership concerning which an accounting should be made, but it was claimed that an accounting was necessary as between the partners in order to account for and settle as between themselves their proportionate liabilities on obligations which were originally or in form personal obligations of complainant, but which were, as complainant claims, obligations of, or assumed by the "syndicate" or partnership, and therefore the subject of accounting between them, in connection with the $10,000 note of the company partly guaranteed by Kinney and C. C. Vermeule. These personal obligations were the notes secured by the mortgages given on the purchase of the lands which were, or were claimed to be, purchased on behalf of the partnership, the title to which was taken in the name of complainant. He afterwards conveyed all these lands to the York Cliffs Improvement Company, which, upon the conveyance, assumed the payment of the mortgages given by him, but these mortgages (five in number), not having been paid, complainant claims that

this proportionate liability of the members of the syndicate or partnership should now be a matter of account and adjustment in connection with the $10,000 note. In April, 1909, the complainant commenced two suits in the supreme court of Maine against John D. Vermeule, one suit to recover five-twelfths of the amount for which complainant was liable on the notes secured by three of said five mortgages, the Daniel Weare mortgage for $3,000, the Phillips mortgage for $2,000 and the Parsons mortgage for $3,300, being $8,300 in all, and another suit to recover one-third of the amount of complainant's liability on the other two mortgages, the Daniel Weare mortgage for $9,000 and the Bowden mortgage for $2,400, $11,400 in all. In September, 1909, defendant John D. Vermeule brought a suit in the supreme court of Maine against the complainant to recover the entire amount of three of the notes given by the complainant on three of these purchases of land—the Bowden note for $2,400 and the Daniel Weare note for $3,000 and the Parsons note for $3,300, which notes were, as he claims, endorsed and delivered to him by the payees, respectively. And in the same month, September, 1909, complainant also brought a suit in the supreme court of Maine against the York Cliffs Improvement Company to recover from it the entire amount of its assumption on all the five mortgages, $19,700. All of these suits were pending and undetermined at the time of the further hearing in this cause.

No suits of any kind, other than the present suit, appear to have been brought, either in Maine or elsewhere, against Joseph N. Kinney, the other defendant named in the original bill in the present suit, or against his executors who were substituted as defendants in 1907, after Kinney's death, on an amendment to the bill. Neither Kinney nor his executors have appeared in the suit, and on an order of publication against his executors a decree *pro confesso* was taken against them, before the final hearing.

The questions argued at the hearing were substantially these:

*First.* The nature of the relation between the parties in reference to the lands in question, and whether or not it was that of partnership or joint adventure in connection with the same.

*Second.* Whether complainant is entitled to an accounting in this court for the purpose of adjusting and settling the accounts of the partnership or joint adventure, including his liability on or payment into court of the judgment obtained against him.

Although the bill is, undoubtedly, framed solely on the theory of a partnership, and this is the only relationship expressly alleged, and the complainant himself throughout all his evidence gives, or attempts to give, all the transactions between them the color and usually the name of partnership transactions, counsel · at the hearing claim the right to an accounting on this bill, even if it should be held that the relation between the parties is that of joint adventure rather than that of a technical partnership. There is a well-settled distinction made by our courts between the two classes of cases, and in many respects the distinction is vital, but in reference to the special question now ultimately involved, viz., that of a right to an account in equity, our courts hold that joint adventurers are entitled to such account, and on that basis, accounts as between joint adventurers or joint owners have been ordered on bills alleging the existence of partnership, and apparently based on this claim alone. *Warwick* v. *Stockton* (*Vice-Chancellor Pitney, 1896*), *55 N. J. Eq.* (*10 Dick.*) *61;* *Jackson* v. *Hooper* (*Vice-Chancellor Howell, 1909*), *76 N. J. Eq.* (*6 Buch.*) *185,* both approved on this point in *Braddock* v. *Hinchman* (*Court of Errors and Appeals, 1911*), *78 N. J. Eq.* (*8 Buch.*) *270.* In these cases, however, the bills seem to have set out specifically the transactions, or many of them, as to which the existence of a partnership was claimed, and the bills prayed general relief. This is the case with the allegations and prayer of the present bill. I think it is clear from the evidence that no partnership *inter sese,* in the legal or technical sense as defined by our courts, existed between the parties, but it is also clear that there was originally a joint adventure, in which they were interested, and on this basis of complainant's right to relief under the bill, I will consider the evidence to determine the nature of this joint adventure, its continuance and whether complainant's right to an accounting of the same against the defendant is made out. Complainant and defendant are the only two witnesses produced to give oral evi-

dence as to the agreement between them, which complainant now always describes or refers to as a partnership, and which relation the defendant denies. There exists, however, a great mass of written evidence, extending through nearly ten years, consisting of the contracts, letters, statements, accounts and other documents, relating to their transactions, as well as the books and accounts of the two Maine companies, which took over or held all the properties in which these parties were jointly interested, and a careful examination and consideration of these documents in connection with the conduct of the parties will solve these questions of fact at issue almost, I think, to the point of demonstration.

(Here follows a statement of the evidence in detail which is omitted by the direction of the vice-chancellor.)

Upon the whole evidence, I conclude that there is no foundation for the claim upon which the bill is based. The evidence shows that no property or assets of any kind have been owned jointly by these parties since the conveyance of the "syndicate" property and the division of the syndicate assets; that all of the transactions in which the parties joined after this time related to advances to the company by the parties individually, and their repayment by the company, and every one of these transactions, except the note on which judgment was obtained against the complainant, was adjusted and settled between the parties at or about the time they were entered into, by making them in their legal form transactions between the separate members and the company directly; that this guaranteed note thus excepted, provided by its written endorsements and guarantees for the independent settlement under it, of the respective obligations of the parties to each other; that the ownership or control of the improvement company's stock or property, as partnership or joint adventure assets, or as incidental thereto, is not proved, and would be invalid for that purpose, if proved, under the decision in *Jackson* v. *Hooper, 76 N. J. Eq. (6 Buch.) 185;* that there are no obligations incurred by or on behalf of the syndicate or any of its members, or in relation to its former properties now outstanding, except complainant's personal obligations for purchase-money on the purchase of the properties, which ob-

ligations were assumed by the company; that as to these, defendant Kinney, on his written purchase of an interest in the lands, never assumed any obligation and is under no obligation to account to complainant, and that defendant Vermeule's liability arises from his sole separate and individual written contract relating to his liability, and is not the subject of this suit for partnership or joint adventure accounting. This liability of the defendant Vermeule is now the subject of litigation in complainant's suit against defendant, brought in the most appropriate tribunals, the courts of the state where the contract was made and the lands located, and whose laws must control the question of liability.

The evidence further shows that the two $5,000 notes sued on in the court of law were separate individual transactions between complainant and defendant Vermeule, in which Kinney had no part, and they are not the subject of any partnership or joint adventure accounts. In reference to either of the three notes, therefore, complainant has not shown any right to an equitable accounting, and the rights of the complainant and defendant J. D. Vermeule in reference to these notes, being as between each other altogether of a legal character, the bill must be dismissed, and defendant may apply for payment to him of the amount paid into court upon his judgment.